UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LAQUISHA JACKSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:17-cv-931 RLM-MGG |
| | ) | |
| UNIDINE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

LaQuisha Jackson, proceeding without a lawyer, sued Unidine Corporation for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, alleging she was subject to a hostile work environment, was discriminated against based on her protected status, and retaliated against for engaging in protected activity. Unidine moved for summary judgment on Ms. Jackson's claims. [Doc. No. 75]. For the following reasons, the court grants Unidine's motion.

The evidence, viewed in the light most favorable to Ms. Jackson, shows that Unidine managed the dining services at St. Paul's Retirement Community and employed the management staff there. Ms. Jackson worked in dining services for St. Paul's. In 2016, Unidine hired her to work at St. Paul's as a dining room supervisor. In that role, Ms. Jackson was to supervise, train, and discipline dining room staff employed by St. Paul's. A performance evaluation shows that she was meeting Unidine's expectations.

The St. Paul's employees she supervised were sometimes rude,

disrespectful, and insubordinate. For example, when Ms. Jackson was addressing performance issues with her subordinates at St. Paul's in the presence of her supervisor, Brian Black, one of her subordinates, Courtnee Brown, got out of her chair, walked up to Ms. Jackson, pointed her finger in her face, and accused Ms. Jackson of being a liar and a bad manager. Ms. Jackson interpreted this as a threat and told Mr. Black that she couldn't work in a hostile environment. Mr. Black met with Ms. Brown and Ms. Jackson, but nothing in the record suggests that he disciplined Ms. Brown.

On April 15, 2017, Samuel "Keith" Johnson, a St. Paul's employee and Ms. Jackson's co-worker, made a sexually explicit gesture and comment to Ms. Jackson. Ms. Jackson threw a piece of paper at Mr. Johnson in jest after he made a joke. As Ms. Jackson bent over in front of Mr. Johnson to pick up the paper, Mr. Johnson pointed to his genitals and asked Ms. Jackson "isn't there something else you could be doing while you're down there?" This was the first time Ms. Jackson ever saw Mr. Johnson acting inappropriately and it disturbed her. A St. Paul's employee reported to Unidine that Mr. Johnson made inappropriate sexual jokes and comments at work and that she felt uncomfortable when he rubbed her back.

Ms. Jackson reported this incident to her supervisor on April 17 and Mr. Johnson was sent home from work. Mr. Johnson returned to work the next day, but Ms. Jackson didn't feel comfortable returning to work and was granted permission to stay home with pay until the investigation was complete. Unidine

and St. Paul's jointly investigated the incident.

On April 24, Unidine told Ms. Jackson that the investigation was complete and she reported to St. Paul's to meet with her supervisor and human resources representatives. They told her that the investigation found that both Mr. Johnson and Ms. Jackson behaved inappropriately. According to Unidine, Mr. Johnson admitted he made an inappropriate, sexually explicit joke and the investigation determined that Ms. Jackson responded to Mr. Johnson's comment with an off-color joke, saying "that's how I got eight kids." Viewing the evidence in the light most favorable to Ms. Jackson, Unidine was wrong: Ms. Jackson she didn't respond with a joke, and just chuckled a bit out of embarrassment. Based on its version of events, Unidine counseled Mr. Johnson, but didn't otherwise discipline him, and also counseled Ms. Jackson and asked her to return to work. Unsatisfied with the investigation and its conclusion, Ms. Jackson didn't feel safe at returning to work. Unidine allowed her to continue on paid leave.

A few days later, Ms. Jackson's supervisor asked her when she planned to return to work and asked her to report to St. Paul's on May 1 to meet with the human resources staff. Unidine told Ms. Jackson that St. Paul's had decided it wouldn't allow her to return to work at its facility or any other facility run by its parent company, Trinity. Unidine asked her to return to work at another Unidine location. Ms. Jackson declined to work at another location. Unidine fired her on May 3 because she failed to report back to work.

Summary judgment is appropriate when the pleadings, discovery

materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011). The court construes the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." Marr v. Bank of America, N,A., 662 F.3d 963, 966 (7th Cir. 2011). A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 at 322). *See also* Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events").

Construing Ms. Jackson's complaint liberally, as the court must do, Parker v. Four Seasons Hotels, Ltd., 845 F.3d 807, 811 (7th Cir. 2017), she appears to

4

raise three claims: that she was subject to a hostile work environment, the she was discriminated against based on her protected status, and that Unidine retaliated against her for reporting a sexually explicit gesture and comment. Unidine moves for summary judgment on all three claims.

Ms. Jackson's hostile work environment claim is based on the atmosphere created by her subordinates at St. Paul's and a sexually explicit gesture and comment by a St. Paul's employee. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or [pervasive] to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Abrego v. Wilkie, 907 F.3d 1004, 1015 (7th Cir. 2018) (quoting Alexander v. Casino Queen, Inc., 739 F.3d 972, 982 (7th Cir. 2014)) (internal quotation marks omitted).

"To survive summary judgment on a hostile work environment claim, a plaintiff must prove four elements: '(1) the plaintiff's workplace was both subjectively and objectively offensive; (2) the plaintiff's [membership in a protected class] was the cause of the harassment; (3) the harassment was severe or pervasive; and (4) there is a basis for employer liability.' " Milligan-Grimstad v. Stanley, 877 F.3d 705, 713–714 (7th Cir. 2017) (quoting Lord v. High Voltage Software, Inc., 839 F.3d 556, 561 (7th Cir. 2016)). Ms. Jackson's hostile work environment claim can't succeed because she can't show that her membership in a protected class was the cause of the harassment by her subordinates and

can't show that one sexually explicit gesture and comment rises to the level that the law considers "severe or pervasive."

Ms. Jackson contends that the St. Paul's employees she supervised created a hostile work environment for her because they were rude, disrespectful, and insubordinate. As an example, she points to the actions of Courtnee Brown, who got up during a meeting Ms. Jackson was leading, put her hand in Ms. Jackson's face, and said she was horrible manager and a liar.

Ms. Jackson makes a compelling case that her subordinates' actions created a very difficult atmosphere for her as a supervisor, which she described to her supervisor as a hostile work environment. But that phrase has a narrower definition in federal employment discrimination law. To succeed on a Title VII hostile work environment discrimination claim, a plaintiff must "present sufficient evidence to permit a reasonable jury to find that the alleged harassment was based on [her] race or sex." Abrego v. Wilkie, 907 F.3d 1004, 1016 (7th Cir. 2018). Ms. Jackson doesn't point the court to evidence that would allow a reasonable fact-finder to decide that actions of her subordinates, including Ms. Brown, were based on Ms. Jackson's race or sex rather than her position as a supervisor or some other reason, so their conduct doesn't support a hostile work environment claim.

Ms. Jackson also argues that Mr. Johnson's sexually explicit gesture and comment created a hostile work environment. When Ms. Jackson bent over in front of Mr. Johnson to pick up a piece of paper, Mr. Johnson pointed to his

genitals and asked Ms. Jackson "isn't there something else you could be doing while you're down there?" This was the only time Ms. Jackson witnessed inappropriate behavior by Mr. Johnson, her co-worker and a St. Paul's employee.

A single incident can create hostile work environment, <u>Cole v. Bd. of Trustees of N. Illinois Univ.</u>, 838 F.3d 888, 897 (7th Cir. 2016) (quoting <u>Jackson v. County of Racine</u>, 474 F.3d 493, 499 (7th Cir. 2007), and a workplace needn't be hellish to be actionable, <u>Gates v. Bd. of Educ. of the City of Chicago</u>, 916 F.3d 631, 637 (7th Cir. 2019), but "[t]o be severe or pervasive enough to create a hostile work environment, conduct must be 'extreme.' " <u>Equal Employment Opportunity Comm'n v. Costco Wholesale Corp.</u>, 903 F.3d 618, 625 (7th Cir. 2018) (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)). "[W]hether behavior crosses that threshold . . . depends on 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " <u>Id.</u> (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)).

Mr. Johnson's behavior can't be defended in a contemporary workplace. But that alone doesn't create liability for Ms. Jackson's employer. "Discrimination laws do not mandate admirable behavior from employers, through their supervisors or other employees. Instead, the law forbids an employer from creating an actionably hostile work environment for members of protected classes." <u>Johnson v. Advocate Health & Hosps. Corp.</u>, 892 F.3d 887,

901 (7th Cir. 2018) (quoting Russell v. Bd. of Trs. of Univ. of Ill. at Chicago, 243 F.3d 336, 343 (7th Cir. 2001)).

Ms. Jackson points to a single incident with no physical contact by a co-worker who wasn't her supervisor or even a Unidine employee. In light of all of the circumstances in this case and considering the conduct the court of appeals has found insufficiently severe or pervasive to support a hostile work environment claim, no reasonable juror could conclude that Mr. Johnson's offensive behavior meets the threshold for Title VII liability. *See* Gates v. Bd. of Educ. of the City of Chicago, 916 F.3d 631, 638 (7th Cir. 2019) (the distinction between conduct by a supervisor and a co-worker is "critical" in determining whether the conduct was severe or pervasive); Equal Employment Opportunity Comm'n v. Costco Wholesale Corp., 903 F.3d 618, 625 (7th Cir. 2018) (discussing the holding of Baskerville v. Culligan International Co., 50 F.3d 428, 430 (7th Cir.1995), and noting that a supervisor "making masturbation gestures while conversing with [the plaintiff], grunting suggestively as she turned to leave his office, referring to her as a 'pretty girl,' and commenting that his office did not get 'hot' until she walked in" wasn't enough to create a hostile work environment); McPherson v. City of Waukegan, 379 F.3d 430, 438–439 (7th Cir. 2004) (no hostile work environment despite a supervisor who ask about the color bra of the plaintiff's bra, pulled back the plaintiff's tank top strap to see the bra, and suggested he check on her at home when she was sick); Adusumilli v. City of Chicago, 164 F.3d 353, 361–362 (7th Cir. 1998) (no hostile work environment

8

when a co-worker made sexual comments and touched the plaintiff's buttocks, arm, or fingers on four separate occasions).

Summary judgment is also appropriate on any claim that Unidine violated Title VII by firing Ms. Jackson for a discriminatory reason. "The legal standard used to evaluate a discrimination claim 'is simply whether the evidence,' considered as a whole, 'would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.' " Abrego v. Wilkie, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016)).

Unidine argues that Ms. Jackson's failure to report back to work caused her discharge, not her race or sex. No evidence in this record supports any other scenario. Unidine put Ms. Jackson on paid leave while Unidine and St. Paul's investigated her sexual harassment complaint. Unsatisfied with the outcome of that investigation, which concluded she acted inappropriately, Ms. Jackson told Unidine she wasn't ready to return to work. Unidine presents undisputed evidence that St. Paul's said that it didn't want Ms. Jackson to return to its facility or any other facility run by its parent company, Trinity. Ms. Jackson points to no evidence that Unidine could force St. Paul's or Trinity to accept a Unidine employee at its facilities. And Unidine can't be held responsible for St. Paul's decision not to allow Ms. Jackson back in its facilities. Brown v. Innovative Sys. Grp., Inc., No. 06 C 1702, 2007 WL 2198347, at *3 (N.D. Ill. July 26, 2007).

9

Because she couldn't work at one of its Trinity facilities, Unidine offered Ms. Jackson the opportunity to transfer to another location. Unidine terminated Ms. Jackson's employment when she didn't accept a transfer and return to work.

Ms. Jackson doesn't argue, or cite any evidence that would allow a reasonable jury to find, that a transfer to a different Unidine location would have "entailed [a] reduction in pay, benefits, or job responsibilities . . . [or] otherwise alter h[er] conditions of employment in a detrimental way," so such a transfer doesn't "constitute a materially adverse employment action." [1] <u>United States Equal Employment Opportunity Comm'n v. AutoZone, Inc.</u>, 860 F.3d 564, 568–569 (7th Cir. 2017). Nor does she present any evidence that Unidine's decision to terminate her was pretextual or of Unidine treating any employee outside of her protected classes any differently. Accordingly, no reasonable trier of fact could find that her race or sex "caused the discharge or other adverse employment action.'" <u>Abrego v. Wilkie</u>, 907 F.3d 1004, 1012 (7th Cir. 2018).

Ms. Jackson also claims that she was retaliated against after she reported Mr. Johnson's sexually explicit gesture and comment. "To prevail on a Title VII retaliation claim, the plaintiff must prove that (1) [s]he engaged in an activity protected by the statute; (2) [s]he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action."

---

[1] The evidence presented indicates that Unidine didn't have any non-Trinity locations in the South Bend metropolitan area. Ms. Jackson says she told Unidine when she was hired that she didn't want to travel for work, but she didn't submit any evidence that a transfer would have detrimentally altered her conditions of employment.

10

Lewis v. Wilkie, 909 F.3d 858, 866 (7th Cir. 2018) (citing Lord v. High Voltage Software, Inc., 839 F.3d 556, 563 (7th Cir. 2016)). For the reasons just discussed, Ms. Jackson can't show that there is a causal link between her protected activity and her termination. Undisputed evidence shows that she was terminated because she didn't return to work and she presents no evidence that Unidine's decision to fire her was pretextual.

For the foregoing reasons, the court GRANTS Unidine's summary judgment motion, [Doc. No. 75], and DIRECTS the Clerk to enter judgment accordingly.

SO ORDERED.

ENTERED:     May 6, 2019

                                              /s/ Robert L. Miller, Jr.
                                              Judge, United States District Court

cc:     L. Jackson